Robert R. Ridl CPA Director of Local Government Audits Office of State Auditor 1365 Logan Street, Suite 300 Denver, CO 80203
Dear Mr. Ridl:
I am writing in response to your letter of January 22, 1982 which requests a legal opinion whether Colorado local governments may lawfully invest in bank repurchase agreements if such agreements provide for the assignment of specific United States government obligations. Your letter makes reference to an opinion of this office dated October 23, 1981 which considered the legality of a bank repurchase agreement investment by a statutory town.
QUESTION PRESENTED AND CONCLUSION
Your specific question is whether a bank repurchase agreement which provides for assignment of specifically identified United States government obligations is a legal investment as authorized by C.R.S. 1973, 24-75-601 or C.R.S. 1973, 31-20-303 (Supp. 1981).
 It is my opinion that such a bank repurchase agreement is a legal investment authorized by those statutes if title to an authorized federal obligation is transferred to the investing government entity.
ANALYSIS
In my letter of October 23, 1981 I concluded that a bank repurchase agreement was not a lawful investment for a statutory town where the agreement failed to convey title in the underlying United States government obligation. The actual investment considered in that letter was not in a United States treasury note, which remained the property of the bank, but in the bank's promise to repurchase the town's "interest" in that note at the end of 89 days. The investment was not federally insured as a deposit or savings account. The repurchase agreement did not provide for the town to have a security interest in any specifically identified federal obligation. This particular investment was clearly not one authorized by C.R.S. 1973, 24-75-601 or C.R.S. 1973, 31-20-303 (Supp. 1981).
Your letter states that since issuance of the October 23, 1981 opinion you have received additional inquiries about bank repurchase agreements which agreements differ in their terms from the agreement addressed in that opinion. In particular, you state that certain bank repurchase agreements provide that the investing government entity receive specific identification and assignment of federal obligations. You ask whether this feature makes a difference in my opinion.
In addition to your letter and attachments, I have received other information about such bank repurchase agreements, principally from Edwin K. McMartin who has advised Pueblo County on these investments. It is my understanding that bank repurchase agreements are typically used to make short-term investments, sometimes only one or two days, of large cash deposits which cannot be tied up for the ordinary full-term of federal government securities. The repurchase aspect of the agreement locks in a particular interest rate to avoid market fluctuations. The participating bank bases the rate on a portfolio of government securities. Apparently, the alternative to use of bank repurchase agreements for such short periods of time is to leave the money idle or invested at a much lower rate.
The general investment authority for Colorado governmental entities is set out at C.R.S. 1973, 24-75-601, which provides as follows in subsection (1), in pertinent part:
 (1) It is lawful for the state of Colorado and any of its institutions and agencies, counties, municipalities, districts, and any other political subdivision of the state, and any department, agency, or instrumentality thereof, or any political or public corporation of the state, whenever any of the foregoing have funds on hand which are not then needed in the conduct of their affairs, to invest the funds in their custody or possession eligible for investment, in any of the following securities:
 (a) Bonds or other interest-bearing obligations of the United States;
 (b) Bonds or other interest-bearing obligations, the payment of the principal and interest of which is unconditionally guaranteed by the United States;
. . . .
A specific statutory provision concerning investment authority of "all cities and towns in this state" is set out at C.R.S. 1973,31-20-303(1) (Supp. 1981). That subsection specifically authorizes investment in "bonds of the United States, in interest-bearing obligations issued by any corporation, agency, or authority created by an act of the United States congress. . . ." It requires that "all securities so purchased shall be duly registered in the name of the treasurer and shall be deposited and safely kept by him in the custody of some state or national bank located in this state." Substantially identical investment authorization is given to counties at C.R.S. 1973,30-10-708(1).
If a bank repurchase agreement conveys title in an identifiable authorized federal government obligation to the investing government entity, such an agreement would fall within the investments authorized by the above-cited statutes. The added fact that the bank is committed to repurchase the obligation at a particular date at an agreed-upon price does not affect the lawfulness of the investment.
The obvious intent of these statutes is maximum protection of public moneys even if investment flexibility is hampered. A difficult question is presented in determining what is necessary to effect conveyance of the obligation and the appropriate registration required by C.R.S. 1973, 31-20-303(1) (Supp. 1981) and C.R.S. 1973, 30-10-708(1). Appropriate procedures may vary depending upon the form of the particular federal obligation.
This question can only be decided on a case by case examination of each particular bank repurchase agreement. This problem is most appropriately addressed to the legal advisor for each governmental entity. That attorney should be satisfied that the transfer of title to the federal obligation has been accomplished and the requirements of the investment statutes are met.
This opinion and that of October 23, 1981 are limited in scope to statutory cities, towns and counties, as well as other governmental entities subject to C.R.S. 1973, 24-75-601. I have not considered whether home rule cities are subject to these statutory restrictions or may adopt their own investment guidelines as a matter of local interest. Some statutory government entities may also have more specific investment guidelines in the organic law which governs those entities.
SUMMARY
It is therefore my opinion that a Colorado government entity may lawfully invest in a bank repurchase agreement which conveys title to a United States government obligation. If you have additional questions concerning this matter, please do not hesitate to contact me.
Very truly yours,
 J.D. MacFARLANE Attorney General
PUBLIC FUNDS SECURITIES MUNICIPAL GOVERNMENT COUNTIES PUBLIC OFFICERS
C.R.S. 1973, 24-75-601
C.R.S. 1973, 31-20-303 (Supp. 1981)
LEGISLATIVE BRANCH Auditor, Office of State
A bank repurchase agreement is a legal investment for Colorado government entities if title to an authorized federal obligation is transferred to the investor.